```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
HARRY VILIEN                          :
                                      :
                    Plaintiff,        :
         v.                           :   06 Civ. 3491
                                      :   Opinion & Order
THE DEPARTMENT OF EDUCATION OF THE    :
CITY OF NEW YORK and                  :
PRINCIPAL KIM N. LAWRENCE OF THE      :
WATCH HIGH SCHOOL.                    :
                                      :
                    Defendants.       :
                                      :
                                      :
-------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Harry Vilien, formerly a regular substitute teacher at WATCH High School, a Department of Education of the City of New York high school, brings claims based on racial and national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. ss. 1981, 1983, the Equal Protection Clause of the Fourteenth Amendment to the Constitution, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, as well as a hostile work environment claim[1] and a common law action for defamation. After discovery, Defendants have moved for summary judgment.

**BACKGROUND**

---

[1] Although it appears that Plaintiff has abandoned his claim of hostile work environment, the Court will address it briefly.

The following facts are either undisputed or described in the light most favorable to the Plaintiff.

Plaintiff began as a regular substitute teacher at WATCH High School in September 2004. (Def. Local Rule 56.1 Statement: para. 5.) Defendant Kim N. Lawrence ("Lawrence") began as principal of WATCH High School on or about November 8, 2004. (Def. 56.1: 6.) Plaintiff is a black Haitian-American. Defendant Lawrence is a black Jamaican-American.

Defendant Lawrence formally observed Plaintiff's class on December 8, 2004, rating the Plaintiff's performance "Unsatisfactory" and stating, in an observation report given to Plaintiff on December 23, 2004, that Plaintiff: 1) did not implement the workshop model and told students to do the work individually, despite being instructed at a pre-observation conference that students should be grouped to create a word problem; 2) did not clearly explain the process for solving the equation; 3) wrote parts of the problems and answers on different parts of the board; 4) did not appropriately assess the students' understanding; 5) lectured to teach concepts rather than using questions to elicit responses from the students; 6) did not properly manage class time – allowing the "problem of the day" to last twenty-five minutes and failing to have adequate time for other planned activities; 7) did not enforce class rules regarding participation, allowing students to call out answers rather than raising their hands; and 8) allowed the classroom to be disorganized and disheveled. (Def. 56.1: 7-9.)

On Friday, December 17, 2004, Defendant Lawrence conducted an informal, or "snap-shot," observation of Plaintiff's class. She wrote a formal report of the lesson, rating the Plaintiff's performance "Unsatisfactory" and stating that Plaintiff: 1) did not

use a lesson plan; 2) did not adhere to the workshop model, but instead had students work independently for over forty minutes; 3) did not spend class time efficiently; and 4) did not review or assess students' understanding. Defendant Lawrence also stated that many students were off task during the independent work time and that six out of twenty students either did not complete the assignment or did it incorrectly. (Def. 56.1: 11, 13)

On January 18, 2005, Defendant Lawrence gave Plaintiff an "Unsatisfactory" rating for the period from September 7, 2004 through January 31, 2005. (56.1: 14.) The previous principal had rated Plaintiff's performance "Satisfactory" in an observation performed shortly prior to Lawrence's arrival in November, 2004. (Plaint. Resp. Local Rule 56.1 Statement: para. 14.)

On January 18, 2005, Lawrence terminated Plaintiff, effective January 31, 2005. (Def. 56.1: 14.) (Regular substitute teachers are entitled to notice of ten school days prior to termination. (Def. 56.1: 15.)) Plaintiff later filed various grievances and appeals, which were denied, and eventually commenced this action on or about May 8, 2006. (Def. 56.1: 16-19.)

Plaintiff alleges that between his termination and September 2005, he applied for at least two teaching positions, and that his prospective employers rejected his application after speaking with Defendant Lawrence or after learning of information contained in a report memorializing his termination. (Plaint. Ex. A, Ex. H.) In September 2005, Plaintiff was appointed to a tenure track position as a math teacher at Ditmas Junior High School, where he continues to teach. (56.1: 22.)

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

**DISCUSSION**

I. Plaintiff's Claims of Discrimination Based on Race and National Origin

a. Exhaustion of Remedies

Before commencing a Title VII lawsuit, a plaintiff must exhaust his administrative remedies. However:

> "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency. A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. This exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering."

*Deravin v. Kerik,* 335 F.3d 195, 200-201 (2d Cir.2003) (citations, internal quotation marks and footnote omitted).

Defendants here argue that Plaintiff has failed to exhaust his administrative remedies because, when he filed charges with the EEOC, Plaintiff checked off the box indicating that he had been discriminated against based on national origin, but did not check off the box for race. The Second Circuit has stated:

> "Because an assertion of racial bias is conceptually distinct from a claim of discrimination on the basis of national origin, raising a national origin claim before the EEOC does not automatically suffice to alert the agency to investigate incidences of racial discrimination. However, courts have also recognized that race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case."

Here, Plaintiff has consistently maintained that he was discriminated against because he is Haitian. He argues that this constitutes discrimination on the basis of both national origin and race. Because the alleged racial discrimination arises from the same set of facts as the alleged national origin discrimination, both claims fall within the scope of the agency's investigation and are reasonably related. Defendant's motion to dismiss for a failure to exhaust administrative remedies is therefore DENIED.

b. Merits of Discrimination Claims

Plaintiff brings claims based on racial and national origin discrimination under Title VII of the Civil Rights Act of 1964,[2] 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. ss. 1981, 1983, the Equal Protection Clause of the Fourteenth Amendment to the Constitution, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.[3] The analysis of discrimination claims under these statutes is substantially the same. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004); Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n. 1 (2d Cir. 2000).

In the absence of direct evidence of discrimination, a plaintiff survives a motion for summary judgment by making out a prima facie case of discrimination, which requires that: (1) he belonged to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003); Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2001). "[O]nce a plaintiff has established a prima facie case, the burden shifts to the defendant...to offer a legitimate, non-discriminatory rationale for its actions." Id. at 138. Once the defendant has made such a showing, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was

---

[2] Under Title VII, "individuals are not subject to liability." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir.2004) (internal cites omitted). Plaintiff's claims against Defendant Lawrence under that statute are dismissed.

[3] Plaintiff alleges discrimination on the basis of both race and national origin by reference to the same comments allegedly made by Defendant Lawrence. The Court will therefore treat Plaintiff's claims of discrimination jointly and will examine these comments for an inference of discrimination on either basis.

more likely than not based in whole or in part on discrimination." Terry v. Ashcroft, 336 F.3d at 138 (quoting Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir. 1997)) (internal quotation marks omitted) (omission in original).

In this case, Defendants argue that Plaintiff has not made a prima facie showing of discrimination because he has failed to provide a basis for finding an inference of discrimination. This Court agrees.

In attempting to establish this inference, Plaintiff offers two statements allegedly made by Defendant Lawrence.

Plaintiff first submits that on January 10, 2005, he spoke on the telephone with Rene Muir, an administrator who worked at WATCH High School. (Def. Ex. F at 94:21-95:2.) During those calls, he claims that Ms. Muir stated that she overheard Defendant Lawrence tell someone that Vilien had power over the Haitian students (who made up a certain percentage of the student body). Ms. Muir, in her deposition, denied overhearing this statement or relaying this information to Plaintiff. (Def. Ex. P at 13:7, 19:5-9, 57:17-58:14.) Even without this denial, Plaintiff's submissions as to this alleged statement amounts to hearsay. "It is appropriate for a district court ruling on summary judgment to consider only admissible evidence." Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114, 123 (2d Cir. 2001). The Court therefore will not consider this submission.[4]

Plaintiff has also claimed (and sworn to in an affidavit) that during a teacher's retreat in November, 2004, Defendant commented in the presence of Plaintiff and two

---

[4] Moreover, even if this statement were admitted into evidence, and even if it were coupled with the remark concerning Haitians fleeing the island, Plaintiff would still have failed to provide more than "stray remarks," and would have raised no inference of discrimination, as discussed directly below. See O'Connor v. Viacom Inc./Viacom Int'l, No. 93 Civ. 2399, 1999 WL 194299, at *5 (S.D.N.Y. Apr. 23, 1996)

other witnesses that Haitians were good swimmers (a reference, Plaintiff states, to attempts by Haitians to leave the island on unsafe boats). (Plaint. Ex. A.)[5] Even if proven, this remark, while insensitive, does not establish that the *adverse employment actions* against Plaintiff were taken under "circumstances giving rise to an inference of discrimination." It is well established that "stray remarks . . . without a demonstrated nexus to the complained of personnel actions, will not defeat the employer's motion for summary judgment." O'Connor v. Viacom Inc./Viacom Int'l, No. 93 Civ. 2399, 1999 WL 194299, at *5 (S.D.N.Y. Apr. 23, 1996); see also Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir.1998) (stray remarks alone "cannot get a discrimination suit to a jury"); Bern v. United Mercantile Agencies, 942 F.Supp. 217, 219-20 (S.D.N.Y.1996).

Moreover, even had Plaintiff established a prima facie case of discrimination, Defendant has countered with a non-discriminatory explanation of the adverse employment action. As discussed above, Defendant Lawrence's performance reviews noted that Plaintiff failed to use the "workshop" model, managed classroom time inefficiently, and failed to elicit proper student participation or success, among other shortcomings. (Local Rule 56.1 Statement.)

The details of Plaintiff's performance review appear to be largely unchallenged. Plaintiff questions the timing of the reports (alleging, without explaining his basis, that Defendant Lawrence had already decided to terminate him before memorializing her observations) and the lack of guidance subsequent to the observations. He does not, however, deny the conduct actually observed by Defendant Lawrence. He does not, for example, dispute Defendant Lawrence's observations concerning the workshop model or

---

[5] At least one of the supposed witnesses to this statement, Ms. Muir, denies having heard any such comment. Def. Ex. P at 33:15-20, 62:24-63:24).

the poor performance of a number of students in Plaintiff's class. Plaintiff, in his response to Defendant's 56.1 statement, argues that the observation reports were a "pretext," and in his Complaint asserts that the reasons given for his termination were "disingenuous[]." Comp. paras. 28-9. Such broad, conclusory assertions, however, cannot establish "circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Terry v. Ashcroft, 336 F.3d at 138 (quoting Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir. 1997)) (internal quotation marks omitted) (omission in original).

Plaintiff neither raises an inference of discrimination based on race or national origin nor overcomes the non-discriminatory explanation for his termination offered by Defendants. Defendants' motion for summary judgment on Plaintiff's claims for race and national origin discrimination is therefore GRANTED.

2. Plaintiff's Claims of a Hostile Work Environment

Although it appears that Plaintiff has abandoned his allegations of a hostile work environment, the Court will briefly address the claim, which fails for reasons similar to those discussed above.

"A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 -374 (2d Cir. 2002) (quotations and citations omitted); Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir.1997) (same). "The plaintiff must show that the workplace was

so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of…employment were thereby altered." Alfano, 294 F.3d at 373 -374; Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). This test has objective and subjective elements: the misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Alfano, 294 F.3d at 373 -374. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. Id.; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "[w]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment"). But it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace. See, e.g., Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (vile and sexually explicit verbal abuse of a female firefighter that challenged her competence, was witnessed by a large group that included her subordinates, and created a justified fear that she would be left in peril at fire scenes); Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999) (observing that a single sexual assault may be sufficient to alter the terms and conditions of the victim's employment).

A plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently

continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quotations and citation omitted). To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse. Harris, 510 U.S. at 23, 114 S.Ct. 367 (relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"); see also Cruz, 202 F.3d at 570.

Finally, it is "axiomatic" that in order to establish a race-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of his race. Richardson, 180 F.3d at 440.

Under these standards, Plaintiff has failed even to state a claim for a hostile work environment. Plaintiff has pled that Defendant Lawrence made a comment referring to Haitians as good swimmers, discussed above, and (via hearsay) that Defendant Lawrence was overheard discussing Plaintiff's power over the Haitian students. Plaintiff has not alleged that these comments were part of an ongoing problem or that they were so extraordinarily severe that they transformed the workplace into a hostile environment. The remaining allegations of poor treatment or personal tension with Defendant are race-neutral and so do not bolster Plaintiff's showing. Therefore, Plaintiff's claim of a hostile work environment cannot be maintained, and Defendants' motion for summary judgment on that claim is GRANTED.

3. Plaintiff's Claims of Defamation

Plaintiff claims that in February, 2005, he was told by prospective employers that he could not be hired because he had been terminated at WATCH High School "for cause," rather than unsatisfactory performance. (Plaint. Ex. A.) Plaintiff states that Defendant Lawrence spoke with at least one and possibly two of Plaintiff's prospective employers and discussed the events leading up to his termination and his observation ratings. (Plaint. Ex. C, pp. 78-79.), and that she was responsible for a code entered into his file indicating that he had been terminated for cause.

To maintain a cause of action based on defamation under New York law, the plaintiff must establish: (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se,[6] and (vii) not protected by privilege. See, e.g. Albert v. Loksen, 239 F.3d 256, 265-266 (2d Cir. 2001); Dillon v. City of New York, 261 A.D.2d 34, 37-38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (citing Restatement (Second) of Torts § 558 (1976))).

In the present case, Plaintiff has failed to provide sufficient evidence giving rise to a triable issue as to whether there was a false statement of fact communicated to Plaintiff's prospective employers and, if that communication occurred, whether it was made with the applicable level of fault.

Plaintiff's defamation claim relies on statements to prospective employers concerning the reasons for his termination from the WATCH school, yet Plaintiff has offered little detail or evidence regarding the substance of these communications. He has

---

[6] Plaintiff here claims slander per se, since they "tend to injure the plaintiff in his or her trade, business or profession." See Albert, 239 F.3d 256, 271 (2d Cir. 2001); Liberman, 80 N.Y.2d at 435, 605 N.E.2d at 347, 590 N.Y.S.2d at 860.

not, for example, come forward with any evidence from the prospective employers, to whom the alleged statements were made. Nor has Plaintiff offered any evidence as to the communication of the termination code---evidence as to how the code was understood by the prospective employers or what, precisely, Lawrence may have said in explaining the significance of this code and how it represented Plaintiff's termination.[7]

Plaintiffs' offering amounts to little more than speculation as to what might have been said or understood by those employers who ultimately did not hire him. "Suspicion, surmise and accusation are not enough to defeat a motion for summary judgment." Pappalardo v. Meisel, 112 A.D.2d 277, 278, 491 N.Y.S.2d 723 (2d Dep't 1985) (quoting Shapiro v. Health Insur. Plan of Greater New York, 7 N.Y.2d 56, 56, 194 N.Y.S.2d 509, 163 N.E.2d 333)). Moreover, even if proven, this speculation would amount to no more than a former employer's protected opinion regarding an employee's performance and the cause of his termination. See Edsell v. Indep. Freightway, Inc., Civ. A. No. 94-CV-227, 1995 WL 375827 at *4 (N.D.N.Y. Jun.16, 1995) ("A defamation action cannot be based on a statement of opinion, and it is a question of law whether a statement is an expression of opinion or fact. As a general rule, statements by an employer about an employee's work performance are expressions of opinion."), aff'd. 101 F.3d 681 (2d Cir.1996)); Serratore v. American Port Services, Inc., 293 A.D.2d 464, 465, 739

---

[7] Defendant, on the other hand, has produced evidence in the form of a sworn statement from Anne Immel, the Principal Administrative Associate at the Regional Operations Center who entered the code "DBC" into the Plaintiff's file. (Immel Decl. ¶¶ 2-6). In her declaration, Ms. Immel states that she had been told to record Vilien's termination for an unsatisfactory performance rating. Ms. Immel states that her handbook, the Employee Information System Transaction Reason Codes List, listed "DBC" as the code for "Termination of Regular Substitute Service," not termination for "cause." (Def. Ex. T). Ms. Immel states that only the Personnel Employee Profile Guide ("Green Book"), a resource unavailable to her at that time, stated that "DBC" indicated "Sub Termination for Cause" (Def. Ex. U). For his part, Plaintiff has not offered any affirmative evidence that Defendant Lawrence instructed Ms. Immel to enter the code DBC, nor does he submit any evidence that Defendant Lawrence or Ms. Immel knew that the code indicated termination for cause.

N.Y.S.2d 452, 454 (2d Dept.2002) (holding that employer's statements to employees that terminated former employee posed a security risk were protected by qualified privilege.).

Moreover, even had Plaintiff provided some basis for a reasonable juror to find that false facts had been communicated to his prospective employers, he has not established that these communications were made with the applicable level of fault. Qualified immunity typically attaches to communications between a former and prospective employer. Albert, 239 F.3d at 272 (2d Cir. 2001). Communications addressing the employee's performance, his character, or the reason for his termination fall squarely within this privilege. See id. ("Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the privilege"); Williams v. Varig Brazilian Airlines, 169 A.D.2d 434, 564 N.Y.S.2d 328, 331 (1st Dept.1991) (employer "has the right, without judicial interference, to assess an employee's performance on the job") (citing Stillman v. Ford, 22 N.Y.2d 48, 290 N.Y.S.2d 893, 238 N.E.2d 304 (1968)); Cellamare v. Millbank, Tweed, Hadley & McCloy LLP, No. 03-0039, 2003 WL 22937683, at *9 (S.D.N.Y. Dec.2, 2003) (citations omitted) ("New York recognizes a qualified privilege with respect to communications between former and prospective employers as to the character of a former employee ... even though such information may prove ultimately to be inaccurate.").

A qualified privilege "can only be overcome by a showing that the defamatory remarks were made with actual malice." Id., at *9. (quotations and citations omitted). To show actual malice under the common law, a plaintiff must prove spite, ill will, or "such

culpable recklessness or gross negligence as constitutes a wanton disregard of the rights of others." Konowitz v. Archway School, Inc., 65 A.D.2d 752, 753, 409 N.Y.S.2d 757 (2d Dep't 1978). To show actual malice under Constitutional jurisprudence, a plaintiff must show: "knowledge that [the statement] was false or…reckless disregard [as to] whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964).

Plaintiff's claim is insufficient under either measure of actual malice. Neither Plaintiff's Complaint nor the materials he has submitted pursuant to the Rule 56 motion present a basis for finding that the allegedly defamatory statements were made with spite, ill will, or either knowledge of their falsehood or reckless disregard as to their veracity. Plaintiff has alleged that Defendant Lawrence "disingenuously indicated that plaintiff was terminated for cause not for a 'U' rating in his evaluations." (Comp. paras. 28-9.) However, to support this allegation, Plaintiff has submitted only the allegedly discriminatory remarks discussed above and an assortment of stray incidents supposedly suggesting tension between Plaintiff and Defendant. None of these facts suggests that actual malice motivated whatever communications were made between Defendant Lawrence and Plaintiff's prospective employers. "[S]pite or ill will," in the context of common law actual malice, "refers not to defendant's general feelings about plaintiff, but to the speaker's motivation for making the defamatory statements." Liberman, 80 N.Y.2d at 438, 590 N.Y.S.2d 857, 605 N.E.2d 344; see also Stukuls v. State, 42 N.Y.2d 272, 281-82, 397 N.Y.S.2d 740, 366 N.E.2d 829; Stillman v. Ford, 22 N.Y.2d 48, 53, 290 N.Y.S.2d 893, 238 N.E.2d 304. "If the defendant's statements were made to further the interest protected by the privilege (here, the candid exchange of employers' opinions of

employee performance), the Defendant's personal opinion of the Plaintiff is of no importance." Huntemann v. City of Yonkers, No. 95-cv-1276, 1997 WL 527880, at **8 - 9 (S.D.N.Y. Aug. 25, 1997 (citing Liberman, 80 N.Y.2d at 439, 590 N.Y.S.2d 857, 605 N.E.2d 344)). "A triable issue is raised only if a jury could reasonably conclude that "malice was the one and only cause for the publication." Huntemann, 1997 WL 527880 at **8 -9 (S.D.N.Y. 1997) (citing Stukuls, 42 N.Y.2d at 282, 397 N.Y.S.2d 740, 366 N.E.2d 829)). Plaintiff's submissions are simply broad attacks on the personal relationship between an employer and a terminated employee. They do not offer a basis for finding malice in the actual communication of the allegedly defamatory statements.

Plaintiff has failed to provide a basis for a reasonable juror to find that there was a false communication of fact made by Defendants concerning Plaintiff, and has not provided adequate support for a finding that such a communication was made with actual malice. Defendants' motion for summary judgment on Plaintiff's defamation claim is therefore GRANTED.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. The Clerk of Court is instructed to close this case.

**SO ORDERED:**

_____
Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         March 31, 2009